IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TROY MICHAEL KELL,<br><br>                Petitioner,<br><br>  v.<br><br>SCOTT CROWTHER, WARDEN, UTAH STATE PRISON,<br><br>                Respondent. | **MEMORANDUM DECISION AND ORDER**<br><br>2:07-cv-00359-CW-PMW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Paul M. Warner |

District Judge Clark Waddoups referred this matter to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Petitioner Troy Michael Kell's ("Mr. Kell") Supplemental Memorandum in response to the court's July 19, 2016, Order[2] and Mr. Kell's Motion for Clarification of Briefing Schedule.[3] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[4]

## BACKGROUND

Respondent the Utah Department of Corrections and Rollin Cook, Executive Director, (collectively "UDC") previously sought to quash or modify Mr. Kell's subpoena to Mr. Cook.[5] In granting in part and denying in part UDC's motion, the court stated:

> UDC has not made the required 'substantial showing' of the harm that would result from producing the documents on the privilege log to Mr. Kell's counsel, partly because such a finding would require the court to assume the worst about the discovery process and Mr. Kell's counsel without any basis for doing so, and

---
[1] Dkt. No. 78.
[2] Dkt. No. 197.
[3] Dkt. No. 199.
[4] Pursuant to DUCivR 7-1(f), the court elects to determine the present motions on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.
[5] Dkt. No. 148.

1

partly because UDC has not articulated why producing the documents on the privilege log pursuant to the protective order would result in the harm that it predicts.

. . . .

Without the threshold showing of privilege made by UDC, the court will not engage in the balancing test to determine the relevance of the requested discovery.[6]

UDC filed a partial objection to the order, which was overruled.[7] In overruling the objection, Judge Waddoups granted UDC leave to file supplemental material to attempt to establish that UDC had met the "substantial threshold standard" articulated in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987).[8]

Based on the supplemental briefing, the court found that UDC had met the substantial threshold requirement with regard to its assertion of the official information privilege.[9] Therefore, the court ordered Mr. Kell "to submit additional briefing and declarations describing *specifically* how each of the requested documents are relevant to the litigation, and what interests would be harmed if the material was not disclosed."[10] On August 5, 2016, Mr. Kell filed supplemental briefing.[11]

During the briefing for UDC's Motion to Quash, Mr. Kell requested a six-month extension of discovery.[12] On July 19, 2016, the court denied Mr. Kell's Motion for Extension of Time and Modification of Discovery Order.[13] On October 28, 2016, Mr. Kell filed a Motion for

---

[6] Dkt. No. 168 at 11.
[7] Dkt. Nos. 170 and 180.
[8] Dkt. No. 180 at 4.
[9] Dkt. No. 191 at 5–6.
[10] *Id.* (emphasis in original).
[11] Dkt. No. 197.
[12] Dkt. No. 187.
[13] Dkt. No. 192.

Clarification of Briefing Schedule.[14] The case management schedule provides that either party may file a motion for an evidentiary hearing within 60 days of the close of discovery.[15] The pendency of UDC's Motion to Quash calls into question the triggering dates in the case management schedule. Therefore, Mr. Kell has requested clarification from the court.

## DISCUSSION

### A. UDC's Motion to Quash

There are three groups of documents at issue in UDC's Motion to Quash. First, UDC has stipulated to the production of certain documents, with limitations. Second, there are documents for which Mr. Kell has failed to offer any argument in support of production. Finally, with respect to Mr. Kell's Request for Production ("RFP") Nos. 7, 8, 10, and 13, there remain documents for which the parties dispute whether Mr. Kell has met his burden to show the documents are relevant to his claims.

#### i. UDC's Withdrawal of Objections

UDC has agreed to produce the following documents to Mr. Kell's counsel pursuant to the protective order currently in place: UDC 00041-00070; UDC 00311-00326; UDC 00717-00718; UDC 00831-00875; and UDC 07851-07969.[16] Documents UDC 00831-00875 are responsive to Mr. Kell's RFP Nos. 18, 19, 20, and 22 and documents UDC 00717-00718 are responsive to RFP No. 9.[17] Accordingly, UDC's objections to production of these documents are DISMISSED as moot. Additionally, the court previously found UDC 00717-00718 and

---

[14] Dkt. No. 199.
[15] Dkt. No. 97.
[16] Dkt. No. 198 at 2–3.
[17] *See* Dkt. No. 148, Ex. F at 4–9.

UDC 00831-00875 to be protected by the government informer's privilege.[18]  Therefore, consistent with the court's prior rulings, UDC may redact the names and identifying information of the informants before producing UDC 00717-00718 and UDC 00831-00875.

### ii. Mr. Kell's Failure to Argue Relevance

In his supplemental briefing, Mr. Kell states that he offers "no argument in support of disclosure of the withheld documents responsive to RFP Nos. 16 and 28, as identified in ECF No. 148, Exh. F."[19]  Additionally, Mr. Kell fails to argue the relevance of the following documents: UDC 00103-00118 ("Early Warning Inmate Verification Process"); UDC 00327-00608 ("Transportation of Inmates"); and UDC 00609-00672 ("Off Property Medical Facility Security Procedures").[20]  Because Mr. Kell does not argue the relevance of these documents, the court GRANTS UDC's Motion to Quash with respect to these documents.

### iii. Mr. Kell Has Failed to Carry His Burden to Demonstrate He is Entitled to the Remaining Documents Responsive to RFP Nos. 7, 8, 10, and 13.

With regards to the remaining documents, the parties dispute whether Mr. Kell has met his burden to show the documents are relevant to Mr. Kell's claims against UDC.  Federal common law recognizes an "official information privilege" that prevents the disclosure of governmental information where disclosure would be contrary to the public interest.  *See Myers v. Koopman*, No. 09-CV-02802-REB-MEH, 2010 WL 1488005, at *2 (D. Colo. Apr. 13, 2010).  The official information privilege "extends to the security considerations applicable to correctional facilities."  *Whitington v. Sokol*, No. 06-CV-01245-EWN-CBS, 2008 WL 435277, at *1 (D. Colo. Feb. 14, 2008).  Importantly, however, the official information privilege is not

---

[18] Dkt. No. 168 at 15 ("The court appreciates the institutional policy objectives that UDC seeks to promote by keeping the names of informants confidential, and grants the motion to quash or modify as it relates to the informants' identities in the responsive documents.").
[19] Doc. No. 197 at 2 n.1.
[20] *See* Doc. No. 181, Ex. K at 1–2.

4

absolute. *Ind v. Colorado Dep't of Corr.*, No. 09-CV-00537-WJM-KLM, 2011 WL 578731, at *3 (D. Colo. Feb. 9, 2011). To determine "what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D.Cal.1995); *see also See Everitt v. Brezzel*, 750 F. Supp. 1063, 1066–67 (D. Colo. 2008).

As delineated in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987), once UDC has made a "substantial threshold showing" asserting the official information privilege, the burden shifts to Mr. Kell to demonstrate how the disputed documents are relevant and what interests would be harmed by nondisclosure. *Id.* at 669–71; *see Myers*, 2010 WL 1488005, at *3 ("Neither privilege is absolute; 'if the party seeking disclosure makes a proper showing of need, the privilege will give way.'" (quoting *In the Matter of Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 774 (10th Cir. 1993)). Specifically, Mr. Kell is required to: (1) show how the requested information is relevant to litigation or reasonably calculated to lead to the discovery of admissible evidence; (2) identify what interest would be harmed by nondisclosure; and (3) specify how that harm would occur and how extensive it would be if nondisclosure occurred. *See Kelly*, 114 F.R.D. at 671. Moreover, Mr. Kell may discuss "why it would be impossible or impracticable to acquire information of equivalent value through alternative means." *Id.*

The remaining documents relate to Mr. Kell's RFP Nos. 7, 8, 10, and 13. Mr. Kell claims that documents responsive to RFP Nos. 7, 8, 10, and 13 will support Claims Eight and Nine in Mr. Kell's Amended Petition for Writ of Habeas Corpus.[21] Claim Eight asserts that the Utah Attorney General's Office's "mysterious and questionable appearance as prosecutor" was improper and that the Utah Attorney General's Office may have had some interest in the

---

[21] Dkt. No. 126 at 21–22.

outcome of Mr. Kell's trial.[22] Similarly, Claim Nine asserts that UDC's attorneys improperly participated in Mr. Kell's prosecution, despite UDC's interest in the outcome of Mr. Kell's trial.[23] Mr. Kell claims that the Utah Attorney General's Office and UDC's attorneys sought to "protect the state's financial interests in a pending lawsuit brought by the family of the victim, Lonnie Blackmon."[24] Mr. Kell argues that documents responsive to RFP Nos. 7, 8, 10, and 13, will demonstrate that the "Attorney General's Office sought to restrict Mr. Kell's access to discovery materials, evidence, and witnesses, to prohibit the testimony of witnesses that would open the State to civil liability, and to otherwise improperly influence the direction of the case."[25]

> To this end, RFP Nos. 7, 8, 10, and 13 request the following:
>
> Request for Production No. 7: Any and all Documents related to or concerning the policies and practices governing the classification, housing and management of inmates at CUCF in effect from January 1, 1992, through December 31, 1998.
>
> Request for Production No. 8: Any and all Documents related to or concerning UDOC or CUCF guidelines for assessing, classifying, and validating an inmate as a gang or severe threat group member, associate, or affiliate for the period of January 1, 1992, through December 31, 1998.
>
> [ . . . ]
>
> Request for Production No. 10: Any and all Documents related to or concerning CUCF or UDOC policy or practice for responding to inmates fashioning shanks or other weapons within CUCF or any UDOC institution in effect for the period of the period of January 1, 1992, through December 31, 1998.
>
> [. . .]
>
> Request for Production No. 13: Any and all Documents related to or concerning any CUCF or UDOC response, corrective action plan, and/or changes in policy or

---

[22] Dkt. No. 94 at 48–49.
[23] *Id.* at 51–52 ("[T]he UDOC's blended representation casts a shadow over any fairness that should have been instituted into Kell's trial.").
[24] Dkt. No. 197 at 3.
[25] Dkt. No. 126 at 21.

practice developed and/or implemented from May 21, 1994, through December 31, 1998.[26]

UDC counters that Mr. Kell has failed to carry his burden to show that the disputed documents responsive to RFP Nos. 7, 8, 10, and 13 are relevant to Claims Eight and Nine.[27] Furthermore, UDC maintains that any interest Mr. Kell has in the disputed documents is substantially outweighed by the public's interest in nondisclosure.[28]

As discussed below, the court finds that Mr. Kell has failed to carry his burden to demonstrate that disputed documents responsive to RFP Nos. 7, 8, 10, and 13 are relevant to Claims Eight and Nine. Moreover, the court finds that the State's compelling safety interests outweigh any interest Mr. Kell has in disclosure.

Mr. Kell seeks discovery of the following UDC policies and general orders concerning the use of force in UDC facilities: UDC 00673-00692 ("Use of Lethal Force"); UDC 00705-00708 ("Use of Force to Stop Life-Threatening Assaults"); UDC 00709-00712 ("Use of Force to Stop Life-Threatening Assaults"); UDC 00713-00716 ("Use of Force to Stop Life-Threatening Assaults"); UDC 07970-08009 ("Non-Lethal Force/Forced Entries"); UDC 08010-08019 ("Less-than-lethal Force/Immediate Response"); and UDC 08020-08059 ("Non-lethal Force/Forced Entries").[29] Additionally, Mr. Kell seeks discovery of UDC special order UDC 00033-00040 ("Defense of Control Room") and UDC 07849-07850, a two-page document that contains UDC's criteria for identifying individuals as members of a security threat group.[30]

Mr. Kell asserts that these documents are relevant to "show whether CUCF personnel were acting in conformance with UDC policies and practices or whether more could have been

---

[26] Dkt. No. 148, Ex. A at 11–12.
[27] Dkt. No. 198 at 8–11.
[28] *Id.* at 6–7.
[29] Dkt. No. 197 at 7-10.
[30] *Id.* at 9.

done to prohibit the offense, which would have contributed to the liability of UDC and its employees."[31]  For example, Mr. Kell claims that UDC's criteria for identifying individuals in a particular security threat group are relevant as they "may indicate that UDC formulated its policy or otherwise modified its practice in response to its failures in classifying, housing, and managing Mr. Blackmon and Mr. Kell."[32]  In other words, Mr. Kell claims that if he can show UDC was financially liable for Mr. Blackmon's death—that officers at the time acted against established UDC policies or that UDC's policies were modified following Mr. Blackmon's death—Mr. Kell can prove the Attorney General's Office and UDC's attorneys improperly restricted his access to evidence and witnesses.

In the court's view, there is no relationship between compliance with or modification to UDC's policies and whether Mr. Kell was prevented from obtaining evidence that may have exposed the State to civil liability.  According to Mr. Kell's theories, the requested records are only relevant to the extent they show that the prosecution sought to restrict Mr. Kell's access to evidence in his criminal case.  Mr. Kell has not demonstrated how the requested policies will aid him in demonstrating the prosecution improperly withheld evidence.  For example, Mr. Kell has not established how the specific methods and techniques utilized by officers to protect the control room will demonstrate that the prosecution improperly restricted Mr. Kell's access to discovery.[33]  Similarly, Mr. Kell does not show how evidence that UDC changed its criteria for identifying individuals as members of a security threat group will demonstrate that the prosecution prevented Mr. Kell from obtaining evidence of the State's civil liability for Mr. Blackmon's death.

---

[31] *Id.* at 8.

[32] *Id.* at 9.

[33] Additionally, as UDC argues, the special order at issue did not come into effect until more than three months after Mr. Blackmon's murder.  Dkt. No. 198 at 10.  Moreover, the contents of the control room were established by witness testimony during Mr. Kell's criminal proceedings. *Id.*

Additionally, Mr. Kell does not explain how his ability to pursue Claims Eight and Nine will be harmed if UDC's policies and general orders are not produced. Mr. Kell simply states that his interest in seeking relief for constitutional violations will be "irreparably harmed" because UDC is "the sole source of this information."[34] Mr. Kell's generic statement of irreparable harm is not enough. Mr. Kell must satisfy the court that without the requested documents, Mr. Kell's ability to pursue Claims Eight and Nine is obstructed.

Moreover, even if the court were to acknowledge a tenuous connection between UDC's policies and the prosecution's alleged conflict of interest, Mr. Kell has not demonstrated that the minimal, if any, probative value of these documents outweighs the State's compelling safety interest in nondisclosure. As the court has previously stated: "The potential harm in this case is not limited to economic or reputational damage or invasion of privacy—it is the potential for severe injury or death to officers, inmates, and others."[35] Furthermore, this risk is even greater given the "serious allegations regarding [Mr. Kell's] history of influencing or manipulating officers, attorneys, and others to circumvent UDC security and jeopardize the safety of others."[36]

Accordingly, the court finds that Mr. Kell has not demonstrated that the disputed UDC policies and special orders are relevant to his claims against UDC, what interests would be harmed if the material is not disclosed, or that any minimal evidentiary value of these documents outweighs the State's safety interests. Therefore, UDC's Motion to Quash with respect to UDC's policies and special orders is GRANTED.

---

[34] Doc. No. 197 at 10.
[35] Dkt. No. 191 at 4.
[36] *Id.*

### B. Mr. Kell's Motion for Clarification of Briefing Schedule

Mr. Kell has asked for the court to clarify when the parties' motions for an evidentiary hearing are due.[37] The case management schedule provides that either party may file a motion for an evidentiary hearing within sixty days of the close of discovery.[38] In light of the court's ruling on UDC's Motion to Quash, the court will entertain a motion to modify the case management schedule to accommodate Mr. Kell's review of the limited number of documents UDC has agreed to provide Mr. Kell. *See supra* at 3–4. Any extension from the court will be narrowly tailored to the stipulated documents and would not open or extend fact discovery.

With this backdrop in mind, any motion for an evidentiary hearing will be due either sixty days from the date of this order or following an adjustment to the case management schedule to allow Mr. Kell to examine UDC's stipulated discovery. Mr. Kell's Motion for Clarification of Briefing Schedule is GRANTED.

### CONCLUSION

Based on the forgoing, UDC's Motion to Quash[39] is GRANTED consistent with this opinion. Mr. Kell's Motion for Clarification of Briefing Schedule is GRANTED.

IT IS SO ORDERED.

DATED this 12th Day of December, 2016.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[37] Dkt. No. 199 at 1.
[38] Dkt. No. 97.
[39] Dkt. No. 148.