# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TROY MICHAEL KELL,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT CROWTHER, WARDEN, UTAH STATE PRISON;<br><br>Defendant. | **MEMORANDUM**<br><br>**DECISION AND ORDER**<br><br>2:07-CV-00359-CW<br><br>Judge Clark Waddoups |

Before the court is Petitioner Troy Michael Kell's Motion to Stay Federal Habeas Proceedings pursuant to *Rhines v. Weber,* 544 U.S. 269, 276 (2005). (ECF No. 245.) Respondent (the State) filed its opposition. (ECF No. 247.) Kell addressed the State's objections in his reply. (ECF. 254.) Kell moves this court to stay his federal habeas proceedings while he returns to state court to attempt to exhaust previously unexhausted claims, specifically Claims 3(D) and 3(F) from his amended petition. The State opposes Kell's motion, arguing that he has not shown good cause for failing to exhaust his claims, the claims lack any potential merit, and the motion is dilatory.

## I. PROCEDURAL BACKGROUND

Kell was serving a life-without-parole sentence for murder when he stabbed fellow inmate Lonnie Blackmon to death. On August 1, 1996, a jury convicted Kell and sentenced him to death. *See generally State v. Kell,* 61 P.3d 1019 (Utah 2002). On November 1, 2002, the Utah Supreme Court affirmed Kell's conviction and sentence. (*Id.*) On August 1, 2005, Kell's post-conviction counsel filed a 21-page Amended Petition for Post-Conviction Relief that contained

only one case citation, and appended no declarations or other new evidence. (PCR 252-72.)[1]
The state moved to dismiss, (PCR 290-93), and the court granted the motion. The Utah Supreme Court affirmed. *Kell v. State,* 194 P.3d 913 (Utah 2008).

On January 13, 2009, Mr. Kell filed a *pro se* motion for relief pursuant to Utah Rule 60(b) in the state court, alleging that he had received ineffective assistance of counsel in his post-conviction proceedings because counsel had failed to investigate and failed to raise many meritorious claims. (PCR 684-51.) Four months later federal habeas counsel filed an Initial Petition in Kell's federal habeas case. (ECF No. 36.) On June 12, 2009, counsel filed a motion to stay federal habeas proceedings, so that he could resolve previously-pending state court litigation. (ECF Nos. 40, 41.) In its order on the motion to stay, the court noted that Kell had filed a "protective federal habeas petition," despite still-pending state court litigation, in order to ensure compliance with the AEDPA statute of limitations. (ECF No. 51.)

The Utah Supreme Court denied the Rule 60(b) appeal. Rehearing was denied and the case was remitted on September 24, 2012. Kell filed his amended petition in this court on January 14, 2013. (ECF No. 94.) His Amended Petition included, for the first time, Claims 3(D) and 3(F), both of which allege extraneous influence on jurors. (ECF No. 94 at 33-40.) These claims were supported by declarations from jurors that were signed in May 2012, after the Utah Supreme Court had issued its opinion denying Mr. Kell's Rule 60(b) motion. (*See* ECF No. 94, exhibits 1, 3, 4, 5, 10, and 11.) Kell asserts that his Amended Petition in this court was his first available opportunity to raise these claims after the denial of his Rule 60(b) motion in state court.

---

[1] The court will cite to the record of Kell's state post-conviction proceedings, Utah Sixth Judicial District, Sanpete County Case No. 030600171, as "PCR" and the Bates-stamped page numbers, for example PCR 431. A copy of this record is filed with the clerk's office in conjunction with ECF No. 118.

## II. ANALYSIS

District courts have inherent authority to issue stays, and AEDPA does not deprive courts of that authority. But it does limit their discretion to exercise that authority because a stay pursuant to *Rhines* creates tension between AEDPA's goals of federalism and comity and its goal of streamlining the federal habeas process. As a result any stay under *Rhines* cannot be indefinite and must meet certain criteria. The petitioner must show that (1) good cause exists for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) he has not engaged in abusive litigation tactics or intentional delay. *Rhines,* 544 U.S. at 276-78. "Petitioner, as movant, has the burden to show he is entitled to a stay under the *Rhines* factors." *Carter v. Friel,* 415 F.Supp.2d 1314, 1317 (D. Utah 2006).

### A. Good Cause

The United States Supreme Court in *Rhines* did not define with any precision what constitutes "good cause." One month after the *Rhines* decision, however, the Court stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' to excuse his failure to exhaust." *Pace v. DiGuglielmo,* 544 U.S. 408, 416-17 (2005).

Since the *Pace* decision, district courts have reached different conclusions about whether good cause in the *Rhines* context is akin to good cause to excuse procedural default in federal court (which is a high standard because it allows the district court to consider the merits of a defaulted claim) or a more expansive and equitable reading of good cause (which is a lower standard that allows the claim to return to the state court for merits review). *Compare Hernandez v. Sullivan,* 397 F. Supp.2d 1205, 1207 (C.D. Cal. 2005) (courts should look to procedural default law to determine cause), with *Rhines v. Weber,* 408 F.Supp.2d 844, 848-49

(D.S.D. 2005) (*Rhines II*) (rejecting procedural default analysis for cause in exhaustion context). Based in part on those different standards, some district courts have found that ineffective assistance of post-conviction counsel constitutes good cause for failure to exhaust. *See, e.g., Vasquez v. Parrott,* 397 F.Supp.2d 452, 464-65 (S.D.N.Y. 2005); *See also Rhines II.*

There is no Tenth Circuit Court of Appeals decision that explains what constitutes "good cause" in the context of a *Rhines* motion. The only circuit court to directly address whether the good cause standard should be high or low is the Ninth Circuit. In *Blake v. Baker,* 745 F.3d 977 (9th Cir. 2014), the court followed *Pace* and *Rhines II* to find that good cause for a *Rhines* stay cannot be any more demanding than a showing of cause for procedural default under *Martinez v. Ryan,* 566 U.S. 1 (2012), and, in fact, may be less demanding.

In two recent cases in the United States District Court for the District of Utah, two district court judges clarified "good cause" in the context of a *Rhines* motion. *Lafferty v. Crowther,* No. 2:07-CV-322, ECF No. 379 (D. Utah Oct. 30, 2015); *Archuleta v. Crowther*, No. 2:07-CV-630, ECF No. 107 (D. Utah Nov. 12, 2014). Both courts found the analysis of *Blake* and *Rhines II* persuasive because in the *Rhines* context a petitioner is returning to state court to allow the state court to consider his claims. The *Lafferty* and *Archuleta* courts' reasoning reflects the important distinction between the "good cause" necessary to excuse the default of state claims, allowing for *federal* review of a claim, and the "good cause" necessary to excuse the default of state claims, allowing a petitioner *to return to state court* in order to afford the state court the first opportunity to consider the claim. "Good cause" in the context of a stay and abeyance procedure is distinct in that the federal court is not preventing the state court from reviewing a claim, rather it is deciding whether a stay is permissible so that the state court can first review the claims before it is presented in federal court.

The *Blake* court held that ineffective assistance of state post-conviction counsel can establish good cause for failure to exhaust. "While a bald assertion [of ineffective assistance of post-conviction counsel] cannot amount to a showing of good cause, a reasonable excuse, supported by the evidence to justify a petitioner's failure to exhaust, will." *Blake*, 745 F.3d at 982. The judges in *Archuleta* and *Lafferty* agreed with the Blake court that "ineffective assistance of post-conviction counsel may constitute good cause for failure to exhaust claims in state court. *Archuleta v. Crowther*, No. 2:07-CV-630, ECF No. 107 at 9-10; *Lafferty v. Crowther,* No. 2:07-CV-322, ECF No. 379 at 8.

The State argues that unless post-conviction counsel had some reason to believe that the jury deliberations had been extraneously influenced, counsel's performance could not have been deficient for not interviewing the jurors. However, the only way that counsel could have established reason to believe jurors' deliberations had been extraneously influenced would be by speaking with the jurors. The Supreme Court has held that a decision to cease investigation must itself be based on a reasonable investigation. *See Strickland v. Washington,* 466 U.S. 668, 690-91 (1984); *Williams v. Taylor,* 529 U.S. 396 (2000); *Wiggins v. Smith,* 539 U.S. 510, 533-34 (2003). Post-conviction counsel could not have made a reasonable strategic decision to limit investigation of jurors because counsel had not conducted any investigation at all. Counsel filed a perfunctory petition, failed to conduct even a cursory investigation of the case, including failing to interview even a single juror, and admitted that none of these decisions were strategic. *See* ECF No. 94 at 150-51, 156-60; ECF No. 94-1 Ex. 15; ECF No. 115 at 180-85; ECF No. 115-1 Ex. 1 at ¶ 6; ECF No. 245 at 12, 15. State post-conviction counsel's deficient performance constitutes cause under *Rhines*.

### B. Potentially Meritorious

For a federal case to be stayed, the unexhausted claims must be "potentially meritorious" and not "plainly meritless." *Rhines,* 544 U.S. at 277-78.

Kell argues that his claims are "potentially meritorious" because *Rhines* requires nothing more than a showing that he raised a "colorable federal claim." ECF No. 245 at 8. He argues that the substance of his claims is not plainly meritless, and that state procedural rules are irrelevant to the inquiry.

The State argues that this hurdle is less about the substance of a claim and more about the procedural way that it would be presented to, and treated by, the state courts. The State argues that Kell's claims are plainly meritless within the meaning of *Rhines* because time and procedural bars would prevent Kell from exhausting the merits of his claims in state court. ECF No. 247 at 20.

The court in *Lafferty*, when addressing the identical argument—that Mr. Lafferty's claims were not potentially meritorious because they would be barred in state court—held the following: "The Utah Supreme Court may agree with the state. It may not. But it is the state court, not the federal court, that should determine the procedural posture of a claim." Order, *Lafferty*, 2:07-cv-322-DB, ECF No. 379 at 9. "Whether a state remedy is presently available is a question of state law as to which only the state courts may speak with final authority." *Simpson v. Camper,* 927 F.2d 392, 393 (8th Cir. 1991). "[A] federal court always must be chary about reaching a conclusion, based upon a speculative analysis of what a state court might do, that a particular claim is procedurally foreclosed." *Pike v. Guarino,* 492 F.3d 61, 74 (1st Cir. 2007). "If the state court resolves the unexhausted claim on a procedural ground, such as a procedural bar under state law, [then] the federal court will review that disposition, applying the standard of

review that is appropriate under the circumstances." *Fairchild v. Workman,* 579 F.3d 1134, 1153 (10th Cir. 2009). Federalism and comity require that the state courts have the opportunity to make those procedural decisions. Thus, in considering whether Kell's claims are potentially meritorious, this court will not address possible state court time and procedural bars, but will leave the determination of the procedural posture of the claims to the state court.

### 1. Claim 3(D) is not potentially meritorious and therefore fails to meet the Rhines requirement

Kell argues in claim 3(D) that his right to a fair and impartial jury was violated when the jurors considered extraneous information and failed to adhere to the court's instructions regarding their discussion of matters presented at trial. The sources of the alleged extraneous information were (1) "discussions between jurors regarding the content of the trial while the trial was still in process," and (2) "communications to the jurors from the CUCF [Central Utah Correction Facility] staff regarding their opinions on the appropriate outcome for the trial and dangerousness of Mr. Kell." ECF No. 245 at 10. The court finds that claim 3(D) does not satisfy the potentially meritorious prong of the *Rhines* analysis, because even if factually true, it does not show that jurors were exposed to any improper extraneous information.

The court notes that under both the Utah Rules of Evidence and the Federal Rules of Evidence, a juror "may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Utah R. Evid. 606(b)(1); Fed. R. Evid. 606(b)(1). "The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." *Id.* There is, however, an exception to this rule: a court may consider a juror's testimony about whether "extraneous prejudicial information was improperly brought to the jury's attention," or whether "an outside influence was improperly brought to bear on any juror."

Fed. R. Evid. 606(b)(2). The "extraneous influences exception covers only "misconduct such as jurors reading news reports about the case, jurors communicating with third parties, bribes and jury tampering." *United States v. Benally,* 546 F.3d 1230, 1236 (10th Cir. 2008).

In Kell's case, two of the jurors carpooled to and from the trial each day and sometimes discussed the fact that the trial was giving them nightmares. ECF No. 94-1, Exhibits 5 and 11. However, neither juror attests to discussing "the content of the trial." They merely state that they discussed how the content of the trial was giving them nightmares. Their nightmares, which preceded their discussion, were mental impressions concerning the case. And the discussion itself, between two jurors, was not an external influence; it was intrinsic. *See U.S. v. Bassler,* 651 F.2d 600, 601-2 (8th Cir. 1981) (holding that "[i]ntrinsic influences on a jury's verdict," such as notes shared among jurors, "are not competent to impeach a verdict"). The jurors do not attest that they had any pre-deliberation discussion about the trial evidence, but even if they did discuss some of the content of the case, there is no indication of extrinsic influence being brought to bear on any juror.

The second aspect of claim 3(D) is that there were communications to the jurors from the CUCF staff regarding their opinions on the appropriate outcome for the trial. The source of this claim was the declaration of one juror, who stated that "there was also community pressure to sentence Kell to death. I knew people who worked at the prison. When I would enter the prison, I understood the sentiment for a death sentence was strong among the prison guards that I passed. All of the prison guards wanted the death sentence. All of them. A lot of people looked at is [sic] as, 'He killed somebody and he ought to be killed.'" ECF No. 94, Exhibit 10. The juror does not say how he arrived at his conclusion. He attests only to his impression about the

sentiment among the security guards. As such, his testimony does not fall under any recognized exception to Rule 606(b). Thus, the evidence supporting claim 3(D) is inadmissible.

A second juror stated: "Deputies escorted us to our vehicles because they were afraid somebody might retaliate against us. I guess they thought we might be sniped or something." ECF No. 94, Exhibit 4. Neither of these jurors' statements support the claim that prison staff told or overtly communicated to the jurors their opinions about the proper outcome. Phrases like "I understood," "people looked at [us] as," and "I guess they thought" make it clear that both of these jurors were simply attesting to their impressions, which are speculative and inadmissible. Neither of them attests to any actual communication by any prison staff member. As a result, claim 3(D) fails to show error, much less a constitutional violation.

### 2. Claim 3(F) is potentially meritorious and therefore meets the second prong of the *Rhines* analysis

In claim 3(F) Kell argues that a supplemental instruction to the jury by the trial court judge unconstitutionally shifted the burden to him to prove that the jury should not impose death. ECF No. 94 at 39. Three jurors recall the judge providing clarification for them on a point of law during their sentencing deliberations. ECF No. 94, Exhibits 2, 5, 6. Specifically, one juror stated:

> I had a difficult time voting for the death penalty but I agreed to do so after Judge Mower came and spoke to the jurors as we deliberated. He told us that Kell's attorneys had to show us that Kell's life should be spared. The jury had bogged down over a definition but the judge's statement helped because we wanted to be sure that we were doing the right thing. I remember that the judge was asked a question while he was speaking to us, and he kidded around and said he couldn't address that question, and said that it was up to us. After the judge came and spoke to us, I felt more comfortable voting for death.

ECF No. 94, Exhibit 5 at ¶ 2. That same juror also recalled that "[t]here was no defense attorney present when the judge spoke to us during deliberations, though there was somebody with him."

*Id.* at ¶ 3. There is no indication from the trial transcript of a question from the jury after the beginning of the guilt or penalty deliberations. ROA at 5464-67, 5735-37, 5742.

Kell argues that the trial judge's alleged instruction to the jury tainted the deliberation process and unconstitutionally shifted the burden to him to prove that his life should be spared. He also asserts that the judge's alleged actions violated the Utah Rules of Criminal Procedure, which state that if the jury "desire[s] to be informed on any point of law arising in the cause," the jury should "be brought before the court where, in the presence of the defendant and both counsel, the court shall respond to the inquiry or advise the jury that no further instructions shall be given," or the court may "respond to the inquiry in writing, . . . and the response thereto shall be entered in the record." Utah R. Crim. P. 17(n). Kell argues that this was a prejudicial error of constitutional magnitude, and that therefore, he has a colorable claim for state-court relief.

Counsel in Kell's state habeas proceedings admitted that he was unaware of this issue because he failed to speak with any of the jurors, and that there was no strategic reason for his failure to do so. ECF No. 94, Exhibit 15 at ¶¶ 3, 4, 12, 14. Because counsel was unaware of the issue, he failed to raise this claim to the state court, meaning that Kell has been denied the opportunity to have this potentially significant claim reviewed by the state court. Counsel's failure to raise this potentially meritorious claim constitutes good cause under *Rhines*.

### C. Intentionally Dilatory Litigation Tactics

The final *Rhines* requirement is that the petitioner show that he has not engaged in "abusive litigation tactics or intentional delay." *Rhines,* 544 U.S. at 277-78. This requirement recognizes that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." *Id.*

The State argues that Kell's *Rhines* motion is dilatory, because it comes ten years into this federal case and after his federal habeas petition has been submitted for decision on oral argument. Although Kell notes that he has complied with the requirements of the Case Management Schedule as agreed to by the parties and ordered by the court, the State argues that the case management schedule did not prohibit Kell from asking for a *Rhines* stay earlier.

The court finds no indication that Kell has engaged in intentional or abusive dilatory litigation tactics. Although federal habeas counsel was initially appointed in this case in 2007, the federal proceedings were stayed and could not move forward because state proceedings were still ongoing from that time until late 2012. In its order staying the federal proceedings, this court found that Kell had filed a "protective federal habeas petition," despite the pendency of litigation in state court, in order to ensure compliance with the AEDPA statute of limitations. ECF No. 51. Shortly after the state court proceedings concluded, Kell filed in this court his Amended Petition for Writ of Habeas Corpus, which included for the first time claims 3(D) and 3(F). Kell noted in his Amended Petition that he would be filing a motion for a stay pursuant to *Rhines* at the appropriate time. Two months later the parties entered into the stipulated Case Management Schedule, in which they agreed to address discovery and an evidentiary hearing prior to addressing other issues. ECF No. 97. Motions related to discovery and evidentiary hearing were resolved on June 23, 2017 (ECF No. 238), and counsel filed this motion on August 28, 2017. The court does not find Kell to have engaged in intentional or abusive dilatory litigation tactics.

### III.  CONCLUSION

After carefully considering the arguments and claims before the court in Kell's Motion to Stay (ECF No. 245.), this court hereby grants a limited stay and abeyance *only* with respect to

Claim 3(F) of his Amended Petition so that he may properly exhaust that claim in the state court. The court denies the motion with respect to Claim 3(D). Mr. Kell must commence his proceedings in state court within thirty days of this order, and he shall provide the court with status updates every three months. Mr. Kell must notify the court immediately upon the resolution of the state court proceedings.

Also, the court authorizes the Public Defender of the District of Arizona to represent Kell in state court proceedings pursuant to 18 U.S.C. § 3599, so that he may attempt to properly exhaust Claim 3(F).

IT IS SO ORDERED.

DATED this 16th day of November, 2017.

BY THE COURT:

CLARK WADDOUPS
United States District Court Judge